247 N.J. Super. 203 (1991)
588 A.2d 1256
IN RE PETITION FOR SUBSTANTIVE CERTIFICATION FILED BY THE BOROUGH OF ROSELAND.
Superior Court of New Jersey, Appellate Division.
Submitted February 6, 1991.
Decided March 26, 1991.
*205 Before Judges SHEBELL, HAVEY and SKILLMAN.
Wilfredo Caraballo, Public Advocate, attorney for appellant in A-1554-88T3 and respondent in A-1563-88T3 (Stephen Eisdorfer, Assistant Deputy Public Advocate, on the brief).
Fox & Fox, attorneys for Borough of Roseland, appellant in A-1563-88T3 and respondent in A-1554-88T3 (David I. Fox, of counsel; Audrey S. Stern, on the brief in A-1563-88T3 and David I. Fox, of counsel; Philip H. Cohen, on the brief in A-1554-88T3).
*206 Robert J. Del Tufo, Attorney General, attorney for respondent Council on Affordable Housing (Michael R. Clancy, Assistant Attorney General, of counsel; Geraldine Callahan and Donald M. Palombi, Deputy Attorneys General, on the brief in A-1554-88T3; Mary C. Jacobson, Deputy Attorney General, of counsel; Donald M. Palombi, on the brief in A-1563-88T3).
Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys for Essex Glen, Inc. submitted a letter advising that it would rely upon the brief submitted by Borough of Roseland (Douglas K. Wolfson, on the letter).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The Public Advocate appeals from a final decision of the Council on Affordable Housing (COAH) granting substantive certification pursuant to N.J.S.A. 52:27D-314 to the housing element and fair share plan of the Borough of Roseland (Roseland). Roseland appeals from COAH's interpretation of the occupancy preference authorized by N.J.A.C. 5:92-15.1, which Roseland was required to follow in order to receive substantive certification. Since the appeals were both taken from COAH's grant of substantive certification to Roseland, we consolidate them.
This proceeding was initiated by a property owner filing an action in the Law Division alleging that Roseland's zoning ordinances fail to provide a reasonable opportunity for the construction of housing affordable to lower income households and are therefore unconstitutional under the Mount Laurel doctrine. See Southern Burlington Cty. NAACP v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713 (Mount Laurel I), appeal dismissed and cert. den., 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975), and 92 N.J. 158, 456 A.2d 390 (1983) (Mount Laurel II). After enactment of the Fair Housing Act of 1985 (FHA), N.J.S.A. 52:27D-301 to -329, the Law Division transferred the case to COAH pursuant to N.J.S.A. 52:27D-316. *207 COAH treated Roseland's motion for transfer as a petition for substantive certification, see Hills Dev. Co. v. Township of Bernards, 103 N.J. 1, 38 n. 10, 510 A.2d 621 (1986), and the Public Advocate filed objections to the petition. COAH rejected the Public Advocate's objections and granted substantive certification to Roseland's fair share plan.
COAH determined that Roseland's fair share of Mount Laurel housing is 165 units. Roseland's certified fair share plan provides for the satisfaction of this obligation through the rehabilitation of three indigenous substandard units, the construction of 96 units in three inclusionary developments in Roseland and a regional contribution agreement (RCA) with the City of Newark under which Roseland will pay $1,138,500 to Newark for the construction of 66 units of new housing. Roseland's fair share plan further provides, as permitted by COAH's regulations, that households which presently reside in the municipality or which have a member who works there shall be granted an occupancy preference with respect to the purchase or rental of new lower income housing constructed in Roseland.
In his appeal, the Public Advocate argues that Roseland's RCA with Newark and the occupancy preference violate the Mount Laurel doctrine by perpetuating exclusionary zoning and violate constitutional and statutory prohibitions against racial discrimination by perpetuating racial stratification within the region. The Public Advocate also argues that COAH's standards of affordability for Mount Laurel housing violate the Mount Laurel doctrine by not providing a realistic opportunity for the construction of housing affordable to persons earning less than 40% of the median household income in the region. We reject these arguments for the reasons expressed in In re Petition for Substantive Certification Filed by the Township of Warren, 247 N.J. Super. 146, 588 A.2d 1227 (App. Div. 1991), which is also being filed today.
*208 The Public Advocate's arguments which are not addressed in Warren are that COAH erred in granting Roseland a downward adjustment of its pre-credited need number for lack of vacant and developable land, and that any housing units deducted from Roseland's pre-credited need number should have been reallocated to other municipalities in the housing region. These arguments are addressed in section I of this opinion. In its appeal, Roseland argues that COAH improperly amended its occupancy preference regulation without following the rulemaking procedures of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-4. This argument is addressed in section II.

I
N.J.S.A. 52:27D-307(c)(2)(f) requires COAH to adopt "criteria and guidelines" for "[m]unicipal adjustment of the present and prospective fair share ... whenever ... [v]acant and developable land is not available in the municipality." Pursuant to this statutory mandate, COAH has adopted comprehensive regulations describing the conditions a municipality must satisfy in order to receive an adjustment of its Mount Laurel obligation. N.J.A.C. 5:92-8.1 to 8.6. In brief, N.J.A.C. 5:92-8.2(b) provides that COAH shall determine the amount and location of vacant and developable land within a municipality, and N.J.A.C. 5:92-8.4(c) provides that COAH shall determine the municipality's ability to absorb its pre-credited need number through inclusionary developments on that vacant and developable land. If a municipality demonstrates that it does not have sufficient vacant and developable land to accommodate its full obligation as determined under COAH's methodology for calculating municipal Mount Laurel obligations, COAH may grant a downward adjustment of that obligation. N.J.A.C. 5:92-8.1.[1]
*209 Pursuant to these regulations, COAH determined that there were only 94 acres of vacant and developable land in Roseland and that that land was sufficient for the construction of only 162 units of lower income housing in inclusionary developments. Accordingly, COAH granted Roseland a downward adjustment of its Mount Laurel obligation from 260 to 165 units of lower income housing (consisting of three substandard housing units within the municipality which will be rehabilitated and a regional fair share obligation of 162 units).
The Public Advocate does not dispute COAH's calculation of the amount of vacant and developable land in Roseland or the number of lower income housing units which could be constructed as part of inclusionary developments on that land. Consequently, the Public Advocate in effect concedes that the downward adjustment of Roseland's fair share would be appropriate if Roseland elected to satisfy its entire obligation through construction of Mount Laurel housing in inclusionary developments in Roseland. However, the Public Advocate argues that because Roseland elected to satisfy part of its obligation through an RCA with Newark and therefore does not have to utilize all of its vacant and developable land for Mount Laurel housing, the downward adjustment violated the Mount Laurel doctrine and the FHA.
We reject this argument and conclude that a municipality's Mount Laurel obligation, once properly calculated, is not subject to recalculation based on the manner in which the municipality chooses to satisfy the obligation. The Legislature has expressly authorized a municipality to "transfer ... up to 50% of its fair share to another municipality within its housing region by means of [a regional contribution agreement]...." N.J.S.A. 52:27D-312(a). The Legislature also has authorized a *210 municipality to "provide for its fair share of low and moderate income housing by means of any technique or combination of techniques which provide a realistic opportunity for the provision of the fair share." N.J.S.A. 52:27D-311(a). We believe that these statutory provisions, which expressly allow a municipality to use an RCA to satisfy part of its Mount Laurel obligation, would be violated if a municipality which had been properly granted a downward adjustment of its Mount Laurel obligation for lack of vacant and developable land were to lose the benefit of that adjustment simply because it chose to satisfy part of its obligation through an RCA. We further note that the total Mount Laurel obligation of a municipality which has received a downward adjustment for lack of vacant and developable land remains the same, regardless of whether the municipality zones for its entire obligation to be constructed within its boundaries or enters into an RCA to fund the construction or rehabilitation of units in another municipality as part of its fair share plan.
The Public Advocate also contends that if COAH's approval of the downward adjustment of Roseland's Mount Laurel obligation was justifiable, COAH was required to assure that this adjustment was compensated by an increase in the number of lower income housing units to be created in other municipalities in the region. However, we recently rejected substantially the same argument in Calton Homes, Inc. v. Council on Affordable Hous., supra, 244 N.J. Super. at 461, 582 A.2d 1024:
Calton argues that if the adjustments are to be granted, the units thereby eliminated must be reallocated elsewhere in the region. The Council notes that "[s]uch reassignment would be difficult to do fairly, and impossible if some of the regional municipalities were already certified ... [and would] make some municipalities provide for more than their fair share...."
The Council's contentions as to the impracticability and unfairness of reallocation are convincing. In Van Dalen v. Washington Tp., 120 N.J. [234] at 246-47 [576 A.2d 819 (1990)] the Supreme Court affirmed the Council's refusal to allow parties to attempt to prove that specific municipalities contain growth areas different than those demarcated in the State Development Guide Plan. The Court was willing to defer to the Council's choice of "easy administration and *211 stability in the planning process" over "greater precision." Id. at 246 [576 A.2d 819]. We likewise defer to the Council's position on this issue as it has not been demonstrated that the Council's position is unreasonable or that sufficient dilution of the goal of the Act will occur as to warrant judicial intervention at this time.
We remain convinced that there are compelling reasons supporting COAH's decision not to reallocate the Mount Laurel obligation of a municipality following a downward adjustment of that obligation. The only fair method of reallocation would involve every other growth area municipality within a region. However, it would be impossible to reallocate units to a municipality which had been granted substantive certification, because substantive certification fixes a municipality's Mount Laurel obligation for the six-year period of repose established by N.J.S.A. 52:27D-313. See Calton Homes, Inc. v. Council on Affordable Hous., supra, 244 N.J. Super. at 443, 582 A.2d 1024; N.J.A.C. 5:92-1.3. Therefore, any reallocation of Mount Laurel obligations would cast an unfair burden on the remaining municipalities in a region which had not received substantive certification. Furthermore, a continuous process of reallocations would prevent COAH's calculations of Mount Laurel obligations from ever acquiring any degree of finality. This would be inconsistent with one of the essential objectives of the FHA, which is to assign a specific obligation which each municipality may rely upon in developing its Mount Laurel compliance plan. Given these legitimate administrative considerations, it was reasonable for COAH to adopt a methodology which does not require a reallocation of Mount Laurel units after every adjustment of a municipal obligation.

II
N.J.A.C. 5:92-15.1 states:
For all low and moderate income housing units provided in inclusionary developments, municipalities shall establish occupancy such that initially, no more than 50 percent of the units are made available to income eligible households that reside in the municipality or work in the municipality and reside elsewhere.
*212 On January 19, 1988, COAH adopted a resolution which states in pertinent part:
1. It is impermissible for a municipality to apply any priorities among applicants outside of those contained in N.J.A.C. 5:92-15.1 et seq.

2. Specifically, with regard to the 50% of units that may be initially reserved for municipal residents and individuals who work in the municipality, it is impermissible to give priority within that 50% to individuals representing any particular occupation or trade. Similarly, it is impermissible to give priority to municipal residents over those individuals working in the municipality; or to individuals who work in the municipality over residents.
Roseland adopted an ordinance providing an occupancy preference for Mount Laurel housing constructed in Roseland which was limited to current residents of Roseland. Since this ordinance conflicted with N.J.A.C. 5:92-15.1, as interpreted in the January 19, 1988 resolution, COAH notified Roseland that it would be required, if it elected to adopt any occupancy preference, to extend it to both local residents and local workers. Roseland amended its ordinance to conform with COAH's interpretation of N.J.A.C. 5:92-15.1 while reserving the right to challenge that requirement.
Roseland argues that N.J.A.C. 5:92-15.1 confers discretion upon a municipality to extend an occupancy preference for Mount Laurel housing to households which either presently reside in the municipality or which have a member who works in the municipality. Roseland further argues that COAH previously interpreted its own regulation to confer such discretion and consequently that COAH should have amended the regulation in accordance with the procedures of the APA if it wished to restrict that discretion. We reject both arguments.
The most straightforward reading of N.J.A.C. 5:92-15.1 is that it authorizes a single preference for two classes of beneficiaries: households which presently reside in the municipality and households which reside elsewhere but have a member who works in the municipality. Nothing on the face of the regulation suggests that a municipality may extend the preference to only one of these classes of beneficiaries. Moreover, even if there were some ambiguity in the regulation, we would be required to accord substantial deference to COAH's interpretation *213 of its own regulation. See Petition of Adamar of New Jersey, Inc., 222 N.J. Super. 464, 469, 537 A.2d 704 (App.Div. 1988). Therefore, we interpret N.J.A.C. 5:92-15.1 to authorize an occupancy preference for Mount Laurel housing only if it is extended to both local residents and local workers.[2]
Furthermore, there is no indication that COAH ever approved a municipal fair share plan which failed to extend the preference to both local residents and local workers or took any other form of official action indicating approval of a more limited form of preference. The most that the record indicates is that some members of COAH were once under the impression that an occupancy preference could be granted which did not apply equally to both classes of beneficiaries.
Under these circumstances, COAH was authorized to interpret its own regulations without going through the rulemaking procedures of the APA. "Administrative agencies have wide discretion in selecting the means to fulfill the duties that the Legislature delegated to them. Agencies may act informally, or formally through rulemaking or adjudication...." Texter v. Department of Human Servs., 88 N.J. 376, 383-84, 443 A.2d 178 (1982) (citations omitted). When an agency adopts regulations, it is "confronted continually with requests for concrete interpretation or construction of its regulations and for advance views on whether certain proposed conduct or activity is permissible...." Boller Beverages, Inc. v. Davis, 38 N.J. 138, 154, 183 A.2d 64 (1962). In responding to such requests, an agency may find it appropriate, on its own initiative, "to issue more detailed interpretations or applications of ... [its] regulations for the future guidance of all persons who may be affected." Id. at 154, 183 A.2d 64. Therefore, an agency is not required to follow the rulemaking procedures of *214 the APA every time it interprets its own regulations but instead may utilize "hybrid proceedings possessing characteristics of both adjudication and rulemaking." Texter v. Department of Human Servs., supra, 88 N.J. at 385, 443 A.2d 178. An agency also may issue informal rulings through procedures that are neither adjudicatory nor rulemaking. See In re Solid Waste Utility Customer Lists, 106 N.J. 508, 519-20, 524 A.2d 386 (1987). And because administrative agencies possess extremely broad discretion with respect to the procedures they employ, "[c]ourts normally defer to that choice so long as the selection is responsive to the purpose and function of the agency." Texter v. Department of Human Servs., supra, 88 N.J. at 385-86, 443 A.2d 178.
Synthesizing prior decisions, the Supreme Court stated in Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331, 478 A.2d 742 (1984) that an agency determination should be adopted as an administrative rule if "all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process." The features characteristic of an administrative rule are that it:
(1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. Id. at 331-32, 478 A.2d 742.
COAH's interpretation of N.J.A.C. 5:92-15.1 satisfied the first two and arguably the sixth Metromedia criteria, but not the third, fourth and fifth. COAH's interpretation was not limited to prospective operation; it applied to pending petitions for substantive certification including the one filed by Roseland. COAH's interpretation did not prescribe a new "legal standard or directive" beyond that previously prescribed by N.J.A.C. *215 5:92-15.1. And COAH's interpretation did not constitute a "material and significant change from a clear, past agency position on the identical subject matter," because COAH had never taken official action reflecting an interpretation of N.J.A.C. 5:92-15.1 different from that contained in its January 19, 1988 resolution. Consequently, COAH's resolution interpreting N.J.A.C. 5:92-15.1 constituted at most a clarification of the intent of that regulation and did not require compliance with the rulemaking procedures of the APA.
Accordingly, we reject the arguments made in both the Public Advocate's and Roseland's appeals and affirm COAH's grant of substantive certification to Roseland's fair share plan.
SHEBELL, J.A.D., concurring in part and dissenting in part.
I concur in the decision of my colleagues on all issues except that of the occupancy preference. On that issue I dissent for the reasons expressed in my dissenting opinion in In re Petition for Substantive Certification filed by the Township of Warren, A-4567-87T3, 247 N.J. Super. 146, 588 A.2d 1227.
NOTES
[1] A more detailed description of the operation of COAH's regulations regarding the calculation of a municipality's "pre-credited need" and the application of any available credits, caps and adjustments to arrive at a final Mount Laurel obligation may be found in Calton Homes, Inc. v. Council on Affordable Hous., 244 N.J. Super. 438, 444-46, 582 A.2d 1024 (App.Div. 1990), certif. den., ___ N.J. ___ (1991).
[2] We assumed that this was the intent of N.J.A.C. 5:92-15.1 in upholding its validity in In re Petition for Substantive Certification filed by the Township of Warren, supra, 247 N.J. Super. at 170-79, 588 A.2d at 1239-1244.